UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STANISLAW KOCZWARA,

        Plaintiff,

-against-

NATIONWIDE GENERAL INSURANCE COMPANY,

        Defendant.

20-CV-2579 (BCM)

**OPINION AND ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/10/22

    Plaintiff Stanislaw Koczwara, the owner of a multi-unit residential building in Brooklyn, brought this action against his homeowner's insurance carrier, defendant Nationwide General Insurance Company (Nationwide), after it declined to cover the losses he incurred as a result of a November 8, 2018 fire in the building. Now before the Court are the parties' cross-motions for summary judgment. (Dkt. Nos. 44, 51.) The material facts, which cannot be disputed, are simple: In his insurance application, plaintiff stated that his property had three units, with three families living in them. The policy that Nationwide issued to him covered "one, two, three or four-family" dwellings. In fact, plaintiff's building had at least six units, rented to unrelated tenants. After the fire, Nationwide discovered the additional units and denied coverage. As explained below, Nationwide was entitled to do so and consequently will be granted summary judgment.

**I.    BACKGROUND**

    **A.    Factual Background**

    The following facts, which unless otherwise noted are undisputed, are taken from (i) defendant's Statement of Material Facts, filed pursuant to Local Civil Rule 56.1 (Def. 56.1 St.) (Dkt. No. 44-1); (ii) the underlying evidentiary materials, including the declaration of Roy A. Mura (Mura Decl.) (Dkt. No. 44-2), the affidavit of John Loftus (Loftus Aff.) (Dkt. No. 44-3), and their exhibits; (iii) plaintiff's Opposition to Defendant's Motion for Summary Judgment (Pl. 56.1 St.) (Dkt. No. 49); (iv) the underlying evidentiary materials, which are attached to the declaration of

Stanislaw Koczwara (Dkt. No. 54) and include the Affirmation of Stanislaw Koczwara (Pl. Aff.) (Dkt. No. 54 at ECF page 46); (v) defendant's Response to Plaintiff's Purported Statement of Material Facts (Dkt. No. 58); and (vi) the reply declaration of Roy A. Mura (Dkt. No. 55).

Plaintiff owns a three-story property at 37 Jewel Street, Brooklyn, New York (the Subject Property). Def. 56.1 St. ¶ 2. On April 12, 2013, he signed an application for a Nationwide homeowner's insurance policy to cover the Subject Property. *Id.* ¶ 3. In the application, plaintiff expressly represented that there were three "families" and three "units" in the building. *Id.* ¶ 4; Loftus Aff. ¶ 8 & Ex. A. Later that month, defendant issued homeowner's policy No. 66 31 HO 674387 (the Policy) to plaintiff. Def. 56.1 St. ¶ 7; Loftus Aff. ¶ 9. Nationwide's underwriting policies at that time prohibited the issuance of a homeowner's policy for a property that had more than four units. Def. 56.1 St. ¶ 6; Loftus Aff. ¶ 24 & Ex. D. Plaintiff's Policy, which was renewed on February 26, 2018 for the period April 15, 2018-April 15, 2019, *see* Loftus Aff. ¶ 10 & Ex. B (copy of Policy as renewed), expressly covered only "the **residence premises**," defined in the Policy as the "one, two, three or four-family dwelling" at "the address shown on the Declarations." Policy Form HE-31-F, at A2, B1 (all bolded Policy text as in the original).[1]

On November 8, 2018, there was a fire at the Subject Property. Def. 56.1 St. ¶ 27, and plaintiff made a claim under the Policy. Mura Decl. ¶ 11. Thereafter, Nationwide learned that each floor of the building had two apartment units. Def. 56.1 St. ¶ 21; Pl. 56.1 St. ¶ 21 (conceding the fact but arguing that it is "irrelevant").[2] Plaintiff lived in a unit on the first floor and rented the

---

[1] Under Coverage A, the Policy covered losses to "[t]he dwelling on the **residence premises**[.]" Policy Form HE-31-F, at B. Under Coverage C, it covered "personal property owned or used by an **insured** at the **residence premises**." *Id*.

[2] After an initial unsworn interview on November 16, 2018 (the contents of which the Court does not rely on for summary judgment purposes), Nationwide conducted more formal "examination under oath," at which plaintiff was represented by counsel, on March 8, 2019. Mura Aff. ¶ 12 &

others, each of which had a separate entrance and was rented pursuant to a separate lease. Def. 56.1 St. ¶¶ 19-26, 34; Pl. 56.1 St. ¶¶ 19-26, 34; Pl. EUO at 34:20-22; Micheo Dep. at 11:12-22, 18:6-16; Kido Dep. at 4:24-5:24, 11:4-23, 19:2-14. None of the six people living in the Subject Premises at the time of the fire – in six different apartments – were related to one other. Pl. EUO at 19:1-19. During his examination under oath, plaintiff repeatedly confirmed that the configuration of the building at the time of the fire was unchanged from when he purchased it in 1995. Pl. EUO at 11:5-6 ("It was like that. That's the way I bought it."); *id*. at 61:5 ("I bought it this way."). Thus, it is undisputed that the building contained at least six units when plaintiff submitted his insurance application to Nationwide.

On the day of the fire, the New York City Department of Buildings (DOB) cited plaintiff for having "3 OR MORE ADDITIONAL DWELLING UNITS THAN LEGALLY AUTHORIZED," after which he was served with a Peremptory Vacate Order to the same effect. Def. 56.1 St. ¶¶ 35-38; Pl. 56.1 St. ¶¶ 35-38 (conceding these facts but characterizing them as "irrelevant"); *see also* Mura Decl. Ex. H (certified copies of DOB records) at ECF pages 130-131, 133, 149, 152, 160.[3]

On February 20, 2019, Nationwide declined to renew the Policy, explaining that "the dwelling is a 6-family home which is ineligible." Def. 56.1 St. ¶ 42; Loftus Aff. ¶ 29 & Ex. E. On

---

Ex. B (Pl. EUO). During the discovery period in this action, Nationwide conducted depositions of two of plaintiff's former tenants: Candelario Micheo, who rented apartment "2 rear" until the fire, *see* Mura ¶ 19(b); *id*. Ex. D (Micheo Dep.); *id*. Ex. E (Micheo lease), and Haruku Kido, who rented apartment "1F." *See* Mura Decl. ¶ 19(c); *id*. Ex. F (Kido Dep.); *id*. Ex. G (Kido lease).

[3] According to the Peremptory Vacate Order, partitions erected within the Subject Property, along with related plumbing and electrical work, had "converted a 3 family dwelling into 7 Class 'A' apartments with no secondary means of egress for 3F, 2F, 1F, and the cellar apartment. These hazardous conditions have therefore rendered the ENTIRE BUILDING unsafe to occupy." Mura Decl. Ex. H at ECF page 149. There is no evidence in the record of this action as to whether the cellar apartment was occupied at the time of the fire.

January 15, 2020, Nationwide denied coverage for the losses caused by the 2018 fire. Def. 56.1 St. ¶ 43; Loftus Aff. ¶ 17 & Ex. C. This action followed.

### B. Procedural History

Plaintiff, initially counseled, brought this action in New York State Supreme Court on February 14, 2020, alleging that Nationwide breached the Policy by denying coverage for the fire losses and seeking at least $409,516 in damages. *See* Compl. (Dkt. No. 6-1) at ECF page 4. Defendant removed the case to this Court on March 27, 2020, on diversity grounds. (Dkt. No. 6.) In its answer, Nationwide asserted, among other things, that coverage was precluded by the express language of the Policy because at all relevant times the Subject Property "was more than a four-family dwelling" and in fact contained "six or seven distinct apartments," occupied by "at least six different and unrelated persons and households." Ans. (Dkt. No. 9) ¶¶ 11-12. It also invoked the "concealment or fraud" provision of the Policy, which specifies that the Policy does not provide coverage for an insured who has "intentionally misrepresented a material fact or circumstance which would have caused **us** not to issue or renew this policy." *Id*. ¶¶ 14-18; Policy Form HE-31-F, at L1 ¶ 2. Following the close of discovery, plaintiff's counsel withdrew, leaving him *pro se*. (Dkt. Nos. 33-38.) On June 18, 2021, defendant filed its motion for summary judgment. On July 15, 2021, plaintiff filed his opposition papers and cross-motion.

## II. ANALYSIS

### A. Legal Standards

#### 1. Summary Judgment

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Holt v.*

4

*KMI–Continental, Inc.,* 95 F.3d 123, 128–29 (2d Cir. 1996). The moving party bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 322; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002). In evaluating the record, the court must construe the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 87 (2d Cir. 2008). "In applying this standard, the court should not weigh evidence or assess the credibility of witnesses. These determinations are within the sole province of the jury." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996)).

If the moving party meets its initial burden, the burden shifts to the non-moving party to establish a genuine dispute of material fact. *Celotex,* 477 U.S. at 322; *Beard v. Banks*, 548 U.S. 521, 529 (2006); *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). To defeat summary judgment, he must present specific, admissible evidence in support of his contention that there is a genuine dispute as to the material facts. *Celotex,* 477 U.S. at 324; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005); *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) (nonmoving party must offer "some hard evidence showing that [his] version of the events is not wholly fanciful"). Furthermore, the evidence must be sufficient to permit a reasonable jury to return a verdict in the non-moving party's favor. *Anderson,* 477 U.S. at 242, 248; *Nick's Garage, Inc. v. Progressive Casualty Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) ("A

genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.") (internal quotation marks omitted). Thus, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

### 2. Local Civil Rule 56.1

In the Southern District of New York, the moving party must submit a "short and concise statement, in numbered paragraphs," of the material facts that it contends to be undisputed, with citations to the underlying evidence. Local Civil Rule 56.1(a). The non-moving party must then respond in kind, with numbered paragraphs that correspond "to each numbered paragraph in the statement of the moving party." Local Civ. R. 56.1(b). To the extent not "specifically controverted" by the non-moving party, the statement of material facts submitted by the moving party may be "deemed to be admitted for purposes of the motion." Local Civ. R. 56.1(c); *see also Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

### 3. Pro Se Parties

Where, as here, a *pro se* party is opposing a summary judgment motion, the court should read his papers "liberally," and "interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Mikinberg v. Baltic S.S. Co.*, 988 F.2d 327, 330 (2d Cir. 1993); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). The court is not obligated, however, to accept a *pro se* litigant's factual assertions where they contradict his own previous statements or are otherwise "beyond belief." *Shabazz v. Pico*, 994 F. Supp. 460, 470 (S.D.N.Y. 1998) (Sotomayor, D.J.) (quoting *Dawes v.*

*Coughlin*, 964 F. Supp. 652, 657 (N.D.N.Y.1997)), *vacated on other grounds* 205 F.3d 1324 (2d Cir. 2000).

### 4. Breach of Contract Under New York Law

Under New York law (which both parties assume to be applicable), contract interpretation "is a matter of law for the court to decide." *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002). When considering an insurance policy, courts apply the same rules of construction applicable to contracts generally. *Rosano v. Freedom Boat Corp.*, 2015 WL 4162754, at *3 (E.D.N.Y. July 8, 2015). Thus, an insurance policy "is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) (citations and internal quotation marks omitted).

Where contract interpretation is at issue, summary judgment may be granted if the words of the contract "convey a definite and precise meaning absent any ambiguity." *Seiden Assocs., Inc., v. ANC Holdings*, 959 F.2d 425, 428 (2d Cir.1992); *see also Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 157 (2d Cir. 2000) ("Summary judgment is generally proper in a contract dispute only if the language of the contract is wholly unambiguous."). Contract language is ambiguous if it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Compagnie Financiere de CIC et de L'Union Europeenne*, 232 F.3d at 158 (quoting *Sayers v. Rochester Tel. Corp. Suppl. Mgmt. Pension*, 7 F.3d 1091, 1094 (2d Cir. 1993)). Although extrinsic evidence may be admissible to interpret an ambiguous contract provision, such evidence may not be introduced for the purpose of rendering ambiguous a contract which is clear on its face. *Consarc Corp. v. Marine Midland Bank, N.A.*, 996

F.2d 568, 573 (2d Cir. 1993) (if a contract is unambiguous, a court is "required to give effect to the contract as written and may not consider extrinsic evidence to alter or interpret its meaning").

### B. Defendant Is Entitled to Summary Judgment on Plaintiff's Breach of Contract Claim

#### 1. The Policy Does Not Cover Losses at the Subject Property

Coverage under the Policy is limited to the "residence premises," defined as the "one, two, three or four-family dwelling . . . located at the mailing address shown on the Declarations[.]" Policy Form HE-31-F, at A2, B1. It is undisputed, however, that the Subject Property had "two apartment units" on each of its three floors, Def. 56.1 St. ¶ 21; Pl. 56.1 St. ¶ 21, for a total of at least six separate units, with separate entrances and leases, in which at least six unrelated persons resided. Def. 56.1 St. ¶¶ 19-26; Pl. 56.1 St. ¶¶ 19-26; Pl. EUO at 18:22-19:19. The DOB records submitted by defendant corroborate these facts (and suggest that there was a seventh unit in the cellar). Mura Decl. Ex. H at ECF pages 130-131, 133, 149, 152, 160. Thus, the Subject Property was in fact a six-family dwelling (at least). And since six-family dwellings are not covered by the Policy, Nationwide was entitled to deny coverage for plaintiff's loss. *See*, *e.g.*, *Dauria v. CastlePoint Ins. Co.,* 104 A.D. 3d 406, 407, 960 N.Y.S.2d 105, 106 (1st Dep't 2013) (where homeowner's policy covered a "two-family dwelling" at the specified address, carrier was entitled to rescind policy, after a fire, upon discovery that the home contained "three separate units, each with its own kitchen, bathroom, and separate entrance"); *Elshazly v. Castlepoint Ins. Co.*, 49 Misc.3d 1216(A), 2015 WL 7737920, at *3 (N.Y. Sup. Ct., N.Y. Co., Nov. 16, 2015) (where policy covered a "one family" or "two family" dwelling at the specified address, carrier properly denied coverage, after a fire, upon learning that "the structural configuration of the Premises was arranged to consist of three dwelling units," two of them occupied by unrelated tenants, "each with its own bathroom, kitchen, living area/bedroom and separate entrance").

### 2. The Policy is Not Ambiguous

Plaintiff contends that the language of the Policy is ambiguous, preventing the Court from granting summary judgment. *See* Pl. Mem. of Law in Opp'n to Def. Mot. for Summ. J. (Pl. Opp'n Mem.) (Dkt. No. 50) at 6-8. He argues that because the Policy uses the term "one, two, three, or four family dwelling" rather than "one, two, three, or four unit building," it is irrelevant that there were at least six separate residential units in the Subject Premises. *Id.*; s*ee also* Pl. 56.1 St. ¶ 14 ("[t]he concept 'unit' does not seem to appear anywhere in the policy contract, h[e]nce should be dismissed as invalid."); *id*. ¶ 15 ("The concept of 'structural configuration' is not reflected in the contract neither.").

Neither logic nor precedent supports plaintiff's hair-splitting argument. To the contrary: the New York courts have repeatedly explained that terms like "four family dwelling" are unambiguous. In *Dauria*, for example, the Appellate Division expressly rejected the argument that plaintiff raises here:

> Nor is there any ambiguity in the policy term "residence premises" which, as relevant here, is defined as "a two family dwelling where you reside in at least one of the family units and which is shown as the 'residence premises' in the Declarations." . . . The term "family," as used in "family units," "one family dwelling" and "two family dwelling," necessarily relates to an entire self-contained dwelling unit[.] Since the premises here consists of three dwelling units, it is a three-family dwelling and does not fit within the policy definition of a covered "residence premises."

104 A.D.3d at 407, 960 N.Y.S.2d at 106 (internal citation omitted); *see also Est. of Gen Yee Chu v. Otsego Mut. Fire Ins. Co.*, 148 A.D.3d 677, 678, 49 N.Y.S.3d 468, 470 (2d Dep't 2017) (because the home in question "was structurally configured as a three-family dwelling," the "the statement on [plaintiff's] insurance application indicating that it was a two-family dwelling was a misrepresentation"); *Castlepoint Ins. Co. v. Jaipersaud*, 127 A.D.3d 401, 4 N.Y.S.3d 498 (1st Dep't 2015) (carrier was entitled to summary judgment where an "inspection of the premises

9

regarding its structural configuration" showed that the home "was a three-family dwelling, rather than a two-family dwelling as covered by the subject policy and as represented in the application for insurance"); *Lema v. Tower Ins. Co. of New York*, 119 A.D.3d 657, 658, 990 N.Y.S.2d 231 (2d Dep't 2014) ("Although the plaintiff represented in the application for insurance that the subject premises was a two-family dwelling, the defendant submitted evidence . . . showing that the subject premises contained three separate dwelling units, each with its own kitchen, bathroom, and separate entrance. This evidence established, prima facie, that the subject premises was a three-family dwelling based on its structural configuration."); *Hermitage Ins. Co. v. LaFleur*, 100 A.D. 426, 953 N.Y.S.2d 209, 209-10 (1st Dep't 2012) (affirming grant of summary judgment to carrier where "the building [the homeowners] described as a two-family dwelling in their application for commercial general liability insurance contains three apartments"); *Almonte v. Castlepoint Ins. Co.*, 45 Misc. 3d 1218(A), 2014 WL 6434448, at *4 (N.Y. Sup. Ct., N.Y. Co., Oct. 8, 2014) (granting summary judgment to carrier where the policy defined "residence premises" as a one or two family home, but the evidence established that "plaintiffs' premises contained a third and separate dwelling unit in the basement, which renders it a three-family dwelling not covered under the policy"), *aff'd,* 140 A.D.3d 658, 33 N.Y.S.3d 718 (1st Dep't 2016); *Elshazly*, 2015 WL 7737920, at *4 ("The structural configuration of the premises is determinative[.]").

The key question, in these cases, is the actual configuration and use of the premises at the time of the application or the loss, not the original floorplan, the deed, or the number of "legal" units authorized by the DOB. *See*, *e.g.*, *LaFleur*, 100 A.D.3d at 427, 953 N.Y.S.2d at 210 ("while the third apartment may have been constructed illegally, the building is nevertheless a three-family dwelling"); *Tower Ins. Co. of New York v. Atuana*, 127 A.D.3d 454, 4 N.Y.S.3d 523 (1st Dep't 2015) ("The deed and City document indicating that the building was a two-family dwelling were

10

irrelevant" where the evidence "sufficiently demonstrated that the building was a three-family dwelling"), *as corrected* (May 19, 2015); *Jaipersaud*, 127 A.D.3d at 401, 4 N.Y.S.3d at 498 ("the number of families is determined by actual use, even if in violation of the certificate of occupancy").[4]

Here, as in *Dauria*, 104 A.D.2d at 407, 960 N.Y.S.2d at 106, there is no ambiguity in the Policy term "residence premises," which excludes buildings with more than four residential units. Nor is there any dispute as to the facts concerning the Subject Property, which was divided into at least six self-contained living units with separate apartment numbers, entrances, and leases. Since the Subject Property was not covered by the Policy, Nationwide did not breach its contract when it disclaimed coverage and is now entitled to summary judgment.

### 3. Plaintiff's "Negligence" Allegation Is Unavailing

Plaintiff further argues that defendant should have inspected the Subject Property to determine the number of units for itself, and that because it issued the Policy without doing so, it should not be permitted to disclaim coverage on this ground. *See* Pl. Opp'n Mem. at 7-8; Pl. Mem. of Law in Supp. of Cross-Mot. for Summ. J. (Dkt. No. 52) at 4-5 (setting out elements of negligence cause of action); Pl. 56.1 St. ¶ 9 (asserting that the Policy was issued "because of defendant's neglect[] [of] his affairs including an inspection [and] the duty of care to verify the Subject Property, for which [it] had plenty to opportunities to make one"). This line of attack fails

---

[4] Nor does it matter whether the owners at the time of the loss reconfigured the property themselves or purchased it after the modifications had already been made. *See, e.g., Canale v. Castlepoint Ins. Co.*, 64 Misc. 3d 1208(A), 2019 WL 2707668, at *3-5 (N.Y. Sup. Ct., Bronx Co., May 20, 2019) (granting summary judgment to carrier where property was "configured as an SRO and occupied by no less than ten separate family units," notwithstanding plaintiffs' testimony that "the layout of the premises remained 'basically' unchanged from the time it was purchased up until the time of the fire and there were no material changes made to the layout").

because neither the Policy nor the law of New York required Nationwide to inspect plaintiff's building before issuing a homeowner's policy. *See City of Amsterdam v. Lam*, 270 A.D.2d 603, 605, 703 N.Y.S.2d 606, 609 (3d Dep't 2000) ("[A]n insurer does not have a duty to inspect the premises before issuing a policy[.]") (collecting cases).[5] Moreover, to the extent that plaintiff now seeks to proceed on a negligence cause of action that he never pled, it is too late. *See Enzo Biochem, Inc. v. Amersham PLC*, 981 F. Supp. 2d 217, 223 (S.D.N.Y. 2013) ("[i]t is well settled that a party may not amend its pleadings in its briefing papers").

### 4. The Court Need Not Reach the Misrepresentation Issue

Because plaintiff's fire loss is not covered by the Policy, the Court does not reach defendant's alternative argument that the Policy is void because plaintiff "'intentionally misrepresented' the 'material fact or circumstance' of how many families lived within and how many units comprised the Subject Premises at the time he filled out his application[.]" Def. Mem. of Law in Supp. of Mot. for Summ. J. (Dkt. No. 44-5) at 8-12. *See Jaipersaud*, 127 A.D.3d at 401-02 (where there was no coverage for plaintiff's losses, because "his home was a three-family dwelling, rather than a two-family dwelling as covered by the subject policy," it was "unnecessary to determine whether the misrepresentation on the insurance application vitiated the policy").[6]

---

[5] To the contrary: New York law imposes a duty on insureds (regardless of their language skills) to "review the entire application and to correct any incorrect or incomplete answers." *Curanovic v. New York Cent. Mut. Fire Ins. Co.*, 307 A.D.2d 435, 437, 762 N.Y.S.2d 148, 151 (3d Dep't 2003) (quoting *N. Atl. Life Ins. Co. of Am. v. Katz*, 163 A.D.2d 283, 285, 557 N.Y.S.2d 150, 152 (2d Dep't 1990)); *see also Courtney v. Nationwide Mut. Fire Ins. Co.*, 179 F. Supp. 2d 8, 11-13 (N.D.N.Y. 2001) ("an individual applying for insurance coverage has a duty to review the application and correct any incomplete or incorrect answers," even where the form was filled out by an agent of the insurer), *aff'd*, 23 F. App'x 91 (2d Cir. 2002) (summary order).

[6] The clause on which Nationwide relies reads as follows: "This policy does not provide coverage for an insured who has intentionally misrepresented any material fact or circumstance which would have caused **us** not to issue or renew the policy." Policy, Form HE-31-F, at L1. Here, is clear that the application form misrepresented the number of "families" and the number of "units" in the

Similarly, the Court does not consider whether Nationwide could have rescinded the Policy pursuant to New York Ins. Law § 3105(b) based on the misrepresentations alone. *See Smith v. Guardian Life Ins. Co.*, 116 A.D.3d 1031, 1032, 984 N.Y.S.2d 597, 598 (2d Dep't 2014) ("[E]ven innocent misrepresentations, if material, are sufficient to allow an insurer to defeat recovery under the insurance contract.") (quoting *Meagher v. Exec. Life Ins. Co. of New York*, 200 A.D.2d 720, 720, 607 N.Y.S.2d 361, 362 (2d Dep't 1994), and collecting cases); *Est. of Gen Yee Chu*, 148 A.D.3d at 678, 49 N.Y.S.3d at 468 ("an insurer may rescind a policy if the insured made a material misrepresentation of fact even if the misrepresentation was innocently or unintentionally made").[7]

## III.  CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment (Dkt. No. 44) is GRANTED and plaintiff's cross-motion (Dkt. No. 51) is DENIED. The Clerk of Court is respectfully directed to enter judgment in favor of defendant and close the case.

Dated: New York, New York
       May 10, 2022

**SO ORDERED**.

_____
**BARBARA MOSES**
**United States Magistrate Judge**

---

Subject Property, *see* Loftus Decl. Ex. A, at ECF page 1, and equally clear that these facts were material. *See* Def. 56.1 St. ¶ 6; Loftus Aff. ¶ 28 (had plaintiff's application "truthfully disclosed that the Subject Property comprised six or seven separate units and was more than a four-family dwelling, Nationwide would not have issued the Subject Policy"); *id*. Ex. D (underwriting guidelines accepting "[u]p to 4 family dwelling"). Plaintiff contends, however, that his misrepresentations could not have been "intentional" because the application form was "all filled by the agent." Pl. Aff. at 1. Plaintiff adds that since he does not speak or read English, and had no interpreter or translator present to explain the "ready filled" document to him, he "only signed what [he was] given to sign," in hopes that the agent "is honest and knows what he is doing." *Id*.

[7] Nationwide does not argue this point in its summary judgment papers.